```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
TROY STEINBERGIN,
                                :
            Petitioner,            REPORT AND RECOMMENDATION
                                :
      -against-                    05 Civ. 6565 (JSR)(MHD)
                                :
SUPERINTENDENT BARKLEY,
                                :
            Respondent.
------------------------------x
```

**TO THE HONORABLE JED S. RAKOFF, U.S.D.J:**

Pro se petitioner Troy Steinbergin seeks a writ of habeas corpus to challenge his 2002 conviction in New York State Supreme Court, New York County, on a single count of Criminal Possession of a Controlled Substance in the Fifth Degree. By his amended petition, petitioner asserts one claim, that the "Intermediate (Appellate) Court committed an error of law by failing to address all of the issues, which effectively denied petitioner his right to appeal his conviction." (Am. Pet. ¶ 13). More specifically, petitioner alleges that the trial court misinterpreted former precedents regarding the scope of the Fourth Amendment and thereby mistakenly convicted him.

Respondent argues that petitioner's single claim, as he articulates it -- that the Appellate Division failed to address all of the issues -- appears to be unexhausted since petitioner did not

1

present his claim to the New York Court of Appeals. (Opp'n Mem. 12). Nonetheless, respondent asserts that petitioner's claim "essentially challenges the appellate court's decision on his Fourth Amendment claims" (id. at 13), and should thus be deemed exhausted but barred from review pursuant to Stone v. Powell, 428 U.S. 465 (1976).

For the reasons that follow, we conclude that petitioner's claim is beyond the scope of habeas review.

Prior Proceedings

Petitioner's conviction stemmed from an incident that occurred on October 30, 2001. Police officers came upon petitioner as they were responding to a radio call reporting shots having been fired in the vicinity of First Avenue and 113th Street in Manhattan. The officers approached petitioner to request that he turn down his car radio, and petitioner's subsequent behavior eventually led them to arrest and search him. The search revealed twenty-two glassine envelopes containing more than 500 milligrams of cocaine.

Petitioner was charged with one count of Criminal Possession of a Controlled Substance in the Fifth Degree. (Plea Tr. 10, Apr.

11, 2002 [hereinafter PT]).[1] He moved to suppress the evidence, and the suppression hearing was conducted before Supreme Court Justice Carol Berkman on April 8, 2002. (Suppression Hr'g Tr. Apr. 8, 2002 [hereinafter SH]). The only witness called was Police Officer Frank Feliciano (SH 5, 53-54), who testified to the encounter with petitioner.

Feliciano testified that the police had received a "radio run" at approximately 5:10 p.m. on October 30, 2001, reporting shots having been fired near 113th Street and First Avenue. (SH 10). Feliciano and his partner officers responded to this report, finding several shell casings on the sidewalk at the location. (SH 11). According to Feliciano, the officers decided to canvass the area, which was primarily residential, to see whether anyone was hurt or required assistance. (SH 11-12). They came upon petitioner and other men, who were in a small parking lot, standing next to a vehicle playing loud music. (SH 13). Feliciano testified that the officers approached to ask the men to turn down the music, and, as they approached, petitioner leaned into the car, lowered the music, tucked the left side of his jacket into his pants, and began walking away. (SH 13-15). The officers had not yet asked the men to lower the music, and had not exchanged any words with petitioner.

---

[1] This transcript is erroneously dated "April 8, 2002," which was the date of petitioner's suppression hearing. (See Opp'n Mem. 6 n.4).

(SH 14-15).

According to Feliciano, as petitioner walked, his jacket flapped open, and petitioner repeatedly tucked it into his pants and looked back at Feliciano. (SH 15, 17). As Feliciano and the other officers walked toward and behind petitioner, petitioner turned around and said, without being asked, that he did not have a gun. (SH 17, 18). Feliciano stated that petitioner then put his hand back on his waistband, and Feliciano placed his hand on petitioner's hand, prompting petitioner to flee. (SH 18-19).

Feliciano ran after petitioner, who continued to keep his left hand in his pocket. (SH 19-20). The officer eventually caught up with petitioner and wrestled him to the ground. (SH 19-22). Feliciano testified that he then noticed two Ziploc bags containing crack cocaine on the ground next to petitioner. (SH 23). The officers searched petitioner, discovering twenty-two additional bags of crack cocaine in his left pants pocket. (SH 23-24). Petitioner was placed under arrest and taken to the police station (SH 24, 27), where he waived his rights and made a statement. (SH 30, 32-33).

At the conclusion of the suppression hearing, Justice Berkman denied petitioner's motion. (PT 9). In doing so, she credited the

officer's testimony, finding it "uncontradicted" and "generally credible." (PT 3). She concluded that petitioner's statement "'I don't have a gun,' together with the adjusting motions" was the "functional equivalent of a bulge in the shape of a gun," which "usually gives rise to probable cause." (PT 7). In concluding that the officers had had probable cause to search petitioner, the court also noted petitioner's flight, the ensuing chase, and the "two bags of crack which appeared to have some relationship with the defendant." (Id.).

In the wake of the court's denial of his motion, petitioner pled guilty (PT 9, 14), receiving a sentence of an indeterminate term of two and one-half to five years in prison. (Sentencing Tr. 2, May 1, 2002).

Petitioner appealed his conviction to the Appellate Division, First Department. He challenged the admissibility of the evidence, arguing that neither probable cause nor reasonable suspicion had existed for the search, and that the search "exceeded the scope of a reasonable frisk for weapons." (Def.-Appellant's Br. i; see id. at 8-18). He also argued that his sentence was excessive. (Id. at 19-20).

On February 19, 2004, the Appellate Division unanimously

affirmed both the conviction and the sentence. People v. Steinbergin, 4 A.D.3d 192, 771 N.Y.S.2d 647 (1st Dep't 2004). In rejecting petitioner's Fourth Amendment arguments, the court explained that when petitioner responded to officers' approach by "looking toward them, suspiciously tucking the side of his thick 'bubble jacket' into his waistband and walking away, the officers had, at the very least, an objective, credible reason to approach for information." Id. at 192, 771 N.Y.S.2d at 648. Noting further that petitioner had "tucked his jacket into his waistband two more times while looking back at the officers, and without any inquiry from the officers, volunteered that he did not have a gun," the court concluded that petitioner's actions, taken as a whole, provided the police with reasonable suspicion. Id. Finally, the court described petitioner's flight and the officers' pursuit and struggle to subdue him, finding that once the police noticed the two glassine envelopes on the ground near petitioner, they had "probable cause to arrest him and to conduct a search incident to that arrest." Id. at 193 (citations omitted).

Petitioner sought leave to appeal this decision to the New York Court of Appeals, reiterating the arguments that he had pressed in the Appellate Division. (See Respt.'s Ex. F). On June 22, 2004, the Court of Appeals denied his leave application. People v. Steinbergin, 3 N.Y.3d 648, 782 N.Y.S.2d 419 (2004).

6

Petitioner next sought a writ of certiorari from the United States Supreme Court. The High Court denied this petition on February 22, 2005. Steinbergin v. New York, 543 U.S. 1159 (2005).

Having been rebuffed on his direct appeal, on July 20, 2005, petitioner filed a petition for a writ of habeas corpus in this Court. In that petition he listed four grounds for relief, including several variants of a challenge to the state courts' rejection of his Fourth Amendment claim. He referred to his first ground as "Denial of Right of Appeal," which he explained as:

> (Appellate Division) failed to rule on the issue concerning the intrusive [search] of my person, af[]ter the Officer concluded (a protective pat-down) that I possessed no weapon, and that his safety or other officers' safet[y], were not in jeopardy. The Court's failure to address this issue denies me my Right to appeal my conviction and sentence.

(Pet. ¶ 12(A)). He next complained that his conviction had been obtained through the use of evidence acquired "pursuant to an unconstitutional search and seizure." (Pet. ¶ 12(B)). His third ground was that his conviction was attributable to the use of physical evidence "obtained as a direct result of an unlawful arrest." (Pet. ¶ 12(c)). His final claim was that he had been denied the effective assistance of trial counsel because his attorney had not objected vigorously enough to the trial judge's purported errors in her decision denying the suppression motion.

(Pet. ¶ 12(D)).

By order dated July 20, 2005, Chief Judge Mukasey directed petitioner to submit an amended petition. Noting that Fourth Amendment claims are ordinarily barred from habeas review under Stone, he concluded that the claims explicitly directed to petitioner's search came within this category and were thus barred from habeas review. As for the other two claims -- the asserted denial of a right to appeal and petitioner's Sixth Amendment claim -- the Court noted that it was not clear whether petitioner had exhausted his state-court remedies. Accordingly, Judge Mukasey ordered petitioner to file an amended petition specifying the steps that he had taken to exhaust his remedies with respect to both of those claims.

Petitioner filed his amended petition on September 22, 2005. In that application, he dropped three of the original grounds for habeas relief, leaving the sole claim that the appellate court had denied him his right to appeal.

Analysis

Petitioner asserts that the Appellate Division "committed an error of law by failing to address all of the issues, which effectively denied petitioner his right to appeal his conviction

8

and sentence." (Am. Pet. ¶ 13). In explaining his position, petitioner contends that the police seizure of him was not justified under the circumstances, and thus that the trial court erred in making its findings. (See Attach. to Am. Pet.). The decision not to suppress the evidence, petitioner argues, conflicts with well-settled precedent, and he complains that the appellate court failed to review the pertinent constitutional issues. (See id.). Petitioner contends in substance that the New York courts did not properly apply Fourth Amendment law to the facts of his case, and as a result he suffered from a "legal breakdown" in the process, warranting review of his claim. (See Petr.'s Reply 3, 9).

Irrespective of the merits of a habeas petitioner's Fourth Amendment argument, habeas review of such a claim is barred "where the State has provided an opportunity for full and fair litigation" of the claim. Stone, 428 U.S. at 482; see also, e.g., Wallace v. Kato, 127 S. Ct. 1091, 1099 (2007) (reiterating Stone's holding); accord, e.g., Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002).[2] Hence, Fourth Amendment claims may be reviewed by the

---

[2] We recognize that Judge Mukasey's prior order appeared to assume that petitioner's appellate-review claim did not run afoul of Stone. The claim, as currently pled, plainly rests on the contention that the state courts erred in denying petitioner's motion to suppress and in affirming that denial. As a result, petitioner cannot evade Stone by characterizing his claim as a denial of appellate rights. Lipuma v. Comm'r, 560 F.2d 84, 93 (2d Cir. 1977) (concluding that although petitioner had not characterized his claim as one arising under the Fourth

9

habeas court only if (1) "the state has provided no corrective procedures at all to redress the alleged fourth amendment violations," or (2) "the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). The Second Circuit has repeatedly held that New York supplies an available statutory mechanism for review of Fourth Amendment claims. Id. at 70 n.1; McPhail v. Warden, 707 F.2d 67, 69 (2d Cir. 1983); Gates v. Henderson, 568 F.2d 830, 837 & n.4 (2d Cir. 1977). Petitioners seeking habeas relief from New York State convictions must therefore show that an "unconscionable breakdown" occurred in the existing process. Capellan, 975 F.2d at 70.

The "unconscionable breakdown" requirement is a narrow exception to the Stone rule. It is not concerned with the "correctness of the *outcome* resulting from the application of adequate state court procedures," focusing instead on the "existence and application of the *corrective procedures* themselves." Id. at 71 (emphasis in original). Thus, even if the

---

Amendment, Stone applied "because at the heart of this case lies an alleged Fourth Amendment violation"); accord Herrera v. Kelly, 667 F. Supp. 963, 970 (E.D.N.Y. 1987) (noting that "even strong disagreement with a state court's reading of the fourth amendment will not suffice to circumvent Stone," and further, "[a]ttempts to find other names" for a Fourth Amendment claim "will not make it any more cognizable" on habeas review).

state courts erred in their assessment of the merits of a Fourth Amendment claim, that is not a sufficient basis for habeas review. Id.

Perhaps in an effort to avoid the obstacle posed by Stone, petitioner does not articulate his claim as one arising under the Fourth Amendment. Rather, he characterizes his claim as a due process violation and says that the state courts' failure "to address all of the issues . . . effectively denied petitioner his right to appeal his conviction and sentence." (Am. Pet. ¶ 13; see also Petr.'s Reply 2-3). His assertions, which are presumably intended to satisfy the "unconscionable breakdown" exception to Stone, cannot prevail here. See, e.g., Castillo v. Miller, 2005 WL 1036346, at *5 (S.D.N.Y. May 4, 2005). Petitioner raised his Fourth Amendment claim before the trial court in the form of a motion to suppress. As a result, he had the opportunity to proffer evidence in support of his challenge to his search and the evidence obtained by it. Although the trial court denied his motion, he also raised his Fourth Amendment claim in the Appellate Division and in his leave application to the Court of Appeals. He thus had, and availed himself of, the opportunity for full and fair litigation of his claim. See, e.g., Baker v. Bennett, 235 F. Supp. 2d 298, 306-07 (S.D.N.Y. 2002).

Moreover, petitioner's contention that the Appellate Division did not explicitly discuss the constitutional issues he raised does not demonstrate an unconscionable breakdown in the legal process available to him. See, e.g., Capellan, 975 F.2d at 71-72. Finding otherwise would place us "in the position of dictating to state courts that they must issue opinions explicitly addressing the issues presented or else face 'second guessing' by the federal courts." Id. at 72; see also Coleman v. Thompson, 501 U.S. 722, 739 (1991) (stating that federal courts "have no power to tell state courts how they must write their opinions"); Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). In any event, the Appellate Division did focus on petitioner's arguments regarding the lawfulness of the search and the suppression of the evidence, as evidenced by its opinion as quoted above. Stone therefore bars review of petitioner's claim.

In an alternative reading of his petition, petitioner asserts that the failure of the Appellate Division to address all of the issues he presented for review constitutes an independent ground for habeas relief. This assertion cannot stand. Petitioner does not have a constitutional right to have an appellate court explicitly discuss every issue he identifies as a basis for appeal.[3] In any

---

[3] For example, it is common for state appellate courts to summarily affirm convictions without opinion. As "the Constitution does not require States to grant appeals of right to

event, as noted, the appellate court did address the claim he currently presents.

## Conclusion

For the reasons noted, we recommend that the writ be denied and the petition dismissed with prejudice.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72,

---

criminal defendants," states are not required to use specific procedures in deciding appeals, so long as whatever procedure is used does not violate the due process and equal protection mandates of the Constitution. See, e.g., Evitts v. Lucey, 469 U.S. 387, 393 (1985). We are unaware of any decision stating that a state appellate court's opinion must explicitly address all issues raised in order to comport with these mandates; if anything, federal courts seem to assume the contrary. See Mercado v. Rockefeller, 502 F.2d 666, 670-671 (2d Cir. 1974) (noting that the Appellate Division and the New York Court of Appeals were not required to review an issue merely because it had been briefed); Galvin v. Kelly, 79 F. Supp. 2d 265, 273-74 (W.D.N.Y. 1999).

6(a), 6(e); <u>Thomas v. Arn</u>, 470 U.S. 140, 150-52 (1985); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

Dated: New York, New York
       April 18, 2007

                                        Respectfully submitted,

                                        _____
                                        MICHAEL H. DOLINGER
                                        UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been mailed today to:

Mr. Troy Steinbergin
107 East 126th Street, Apt. 8V
New York, New York 10035

Frederick H. Wen, Esq.
Assistant Attorney General
   for the State of New York
120 Broadway
New York, New York 10271